UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| In re MICHAEL DALE SHIFFLETT, | ) | Case No. 05-62674-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| _____ | ) | |

## ORDER

For the reasons stated in the accompanying memorandum,

It is ORDERED that the motion of the United States trustee to dismiss the above-captioned case for substantial abuse is denied.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtor and Douglas Little, Esq., counsel for the Debtor.

Entered on this 19th day of May, 2006.

William E. Anderson
United States Bankruptcy Judge

1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| In re MICHAEL DALE SHIFFLETT, | ) | Case No. 05-62674-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| | ) | |

### MEMORANDUM

This matter comes before the court on a motion brought by the United States trustee under section 707(b) of the bankruptcy code[1] to dismiss this case for substantial abuse. Michael Dale Shifflett ("the Debtor") opposes the motion.

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may render a final order.

For the reasons stated below, the Court concludes that it would not be a substantial abuse of the provisions of chapter 7 for the Debtor to continue under this chapter. The motion will be

---

[1]    Herein, "Section" refers to the given section in the bankruptcy code. The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

1

denied.

## *I. Facts*

On July 21, 2005, the Debtor filed an individual chapter 7 petition. The Debtor scheduled no real property.[2] The Debtor scheduled total secured claims in the amount of $20,423.98, and general unsecured claims in the amount of $65,452.27.[3] The Debtor did not schedule any priority unsecured claims.[4]

He scheduled monthly gross income of $4,553.50 from his full-time position as a Stockroom Supervisor.[5] He scheduled monthly net income of $2,819.57 from that position.[6] The net income is calculated in part by a deduction from the Debtor's gross income in the amount of $382.18 that constitutes a monthly payment made toward repaying a loan from his 401(k) retirement account. On the date of petition, the outstanding balance on the debt owed to the 401(k) account was $10,558.98. The Debtor scheduled total monthly expenses in the amount of $2,736.49.[7] His expenses include $550.00 in support payments made to his former wife.

On October 18, 2005, the United States trustee filed a motion under 11 U.S.C. § 707(b) to dismiss this case on the grounds that granting relief would constitute substantial abuse.

## *II. Discussion*

A case under chapter 7 may be dismissed if (1) the debtor's debts are primarily consumer

---

[2]    See Debtor's Schedule A.

[3]    See Debtor's Schedules D and F.

[4]    See Debtor's Schedule E.

[5]    See Debtor's Schedule I.

[6]    See Debtor's Schedule I.

[7]    See Debtor's Schedule J.

2

debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief. 11 U.S.C. § 707(b)[8].

"There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)). The presumption, however, is meant to be something more than a rule about the burden of proof since that burden would already have been on the party seeking to dismiss the case. Collier, supra. "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present." 4 Collier on Bankruptcy at 707-28. (Emphasis added.)

The first issue is whether the Debtor's debts are consumer debts. Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose". 11 U.S.C. § 101(8). The Debtor does not deny that his debts are primarily consumer debts in this case.

We turn now to the second issue, that of substantial abuse. In Green, the Fourth Circuit

---

[8] Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

3

provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse. In Green, the debtor was employed as a bus driver, a job that he had held for at least 13 years. His income exceeded his necessary expenses by $638.00 per month. He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989. The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income. The United States District Court affirmed the decision of the Bankruptcy Court.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse. Green, 934 F.2d at 571-572. Rather, the Court concluded that "the determination must be made on a case-by-case basis, in light of the totality of the circumstances." Green, 934 F.2d at 572. The Court remanded the case to the Bankruptcy Court with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a trial court should consider disposable income in rendering a decision on a motion under section 707(b).[9] The Fourth Circuit first held that the existence of disposable income does not, without more, constitute substantial abuse. The Court based the holding on three inquiries.

The Court first considered a *per se* rule basing dismissal solely on the existence of disposable income by looking at the Congressional history.

---

[9] Disposable income is defined, for purposes of section 1325, which requires the debtor to pay all of his or her disposable income into the plan, as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ." 11 U.S.C. § 1325(b)(2).

4

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1968).

Green, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law. "The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule we are urged to adopt would render this presumption [in favor of granting the relief requested by the debtor] toothless." Green at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and section 109[10] of the Bankruptcy Code in particular.

> Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy. Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are

---

[10] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection (c) or (d) of section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act, except that an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
    (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

5

predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990). Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive." *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

Id.

The Fourth Circuit Court of Appeals also provided a non-exclusive list of five additional factors that trial courts should consider when entertaining a motion to dismiss for substantial abuse. They are:

(1)  Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)  Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)  Whether the debtor's proposed family budget is excessive or unreasonable;

(4)  Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5)  Whether the petition was filed in good faith;

Green, 934 F.2d at 572.

The Fourth Circuit Court of Appeals also cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three additional, if not distinct, factors.

(6)  Whether the debtor engaged in free-wheeling spending[11];

---

[11]  See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

6

(7) Whether the debtor altered monthly obligations in statements to the court at least three times[12]; and

(8) Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay favored creditors[13].

Green, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an accounting, rather, each factor is considered in light of its weight and relevance in the case under consideration. A factor that is irrelevant in one case may be determinative in another.

A. The Debtor's Disposable Income.

Whether the Debtor has disposable income that he could use to fund a chapter 13 plan is the primary factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse. See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005). ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse.")

The amount of a debtor's disposable income is important in the context of a motion under section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter 13 plan if that plan is to be confirmed.[14] Disposable income is a measure of the amount that a

---

[12] See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[13] See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

[14] A debtor must commit all of his or her disposable income to plan payments if the plan is to be confirmed. See 11 U.S.C. § 1325(b)(1)(B). Additionally, the debtor must pay all priority claims as defined in section 507(a) in full, see 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-interest-of-the-creditors test), see 11 U.S.C. § 1325(a)(4).

7

debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter 13. Disposable income may be defined as the difference between a debtor's net income and his net expenses.[15]

*Net Monthly Income.* The Debtor scheduled monthly gross income of $4,553.50 from his full-time position as a Stockroom Supervisor. He scheduled monthly net income of $2,819.57 from that position.

The United States trustee argues that the monthly payment of $382.18 made to the Debtor's 401(k) account is a "preferential payment" to his benefit and to the detriment of his creditors. The United States trustee argues that the Debtor should be required to breach his duty to repay the balance of the borrowed 401(k) funds and to absorb the tax consequences of that breach. The United States trustee suggests that the amount of the tax consequences could be paid through a chapter 13 plan over a thirty-six-month period. The effect of the tax payment is discussed below.

The United States trustee also argues that the debtors expected federal and state tax refunds should be included in his net income. The United States trustee calculates the monthly state refund at $16.12 per month and the federal refund at $126.93 per month, or a total of $143.05 per month. For purposes of this analysis, the Court accepts the United States trustee's assertion that the Debtor will receive additional income of $143.05 per month as a pro rata proportion of his federal and state tax refunds.

After adjusting for a default of the 401(k) loan obligation and the increase due to the inclusion of tax refunds, the Debtor's net monthly income would be $3,340.80 ( = $2,819.57 +

---

[15] See footnote 15, <u>supra</u>, for the definition "disposable income" in the bankruptcy code.

8

$382.18 + $143.05).

*Monthly Expenses.* The Debtor scheduled total monthly expenses in the amount of $2,736.49.[16] His expenses include $550.00 in support payments made to his former wife. The United States trustee does not challenge this amount.

The Debtor argues that under the Separation and Property Settlement Agreement ("the Separation Agreement")[17] he will be required to pay an additional $100.00 to his former wife if he breaches his obligation to repay the 401(k) loan and that this amount should be added to his expenses. The Separation Agreement provides that the Debtor must pay his former wife $550.00 per month and that this amount will increase to $650.00 per month if the Debtor pays the loan secured by his Chevrolet Silverado in full or "until his current loan from his 401k is paid in full . . . which ever comes first."

The United States trustee argues that the Debtor will not be required to pay the additional $100.00 because the additional $100.00 payment is only to be triggered in the event that the Debtor has the additional income to make the payment and he "will not have the additional net income available until both the 401k loan and the tax consequences of early withdrawal are paid off." For purposes of this analysis, the assertions of the United States trustee are accepted as true[18].

The Separation Agreement, however, provides that the $100.00 increase shall become

---

[16]  See Debtor's Schedule J.

[17]  See Separation and Property Settlement Agreement, Exhibit 9.

[18]  The argument of the United States trustee is accepted for purposes of this analysis only. This Court makes no finding regarding the effect on the Separation Agreement caused by a hypothetical breach by the Debtor of his duty to repay the 401(k) loan.

9

effective on October 1, 2007, even if the Silverado and the 401(k) loan are not paid in full as of that date. Accordingly, if the argument of the United States trustee is accepted, only an additional $1,600.00 will be available for payment to the chapter 13 trustee during the pendency of the plan. During the 20-month balance of the hypothetical plan, the Debtor would be required to pay his former wife the additional $100.00 per month and would not have that money to pay the chapter 13 trustee. Accordingly, $2,000.00 (20 months X $100.00 per month) will be deducted below from the total amount available to creditors in a thirty-six-month plan.

The Debtor's monthly expenses under the scenario envisioned by the United States trustee would be $2,736.49.

*Net Monthly Income and the effect on a Chapter 13 Plan.*

The Debtor's monthly disposable income for purposes of a chapter 13 plan would be $604.31 ( = $3,340.80 - $2,736.49). During the pendency of a thirty-six month chapter 13 plan, the Debtor could pay a total of $21,755.16 ($604.31 X 36) less the $2,000.00 that he will be required to pay his former wife beginning on October 1, 2007, or $19,755.16. Of this amount the chapter 13 trustee would be paid approximately 10% or $1,975.51 and the Debtor's attorney would be paid approximately $2,500.00. Priority and general unsecured creditors would receive $15,279.65 ( = $19,755.16 - $1,975.51 - $2,500.00).

If the Debtor were to proceed according to the suggestion of the United States trustee to breach his repayment obligation to the 401(k) account[19], he would incur a federal tax liability of

---

[19] One problem with this recommendation is that if the tax liability is deemed to arise post-petition, it would not be subject to payment through the chapter 13 plan. Of course, this problem would be solved if the Debtor were to permit dismissal of his case, declare a breach of the 401(k) repayment obligation and then file a chapter 13 petition. The question would then arise as to whether such a sequence of acts constitutes bad faith.

10

25%, a federal penalty of 10% and a state tax liability of 5.75%.[20] He would incur a total tax and penalty liability of $4,315.01 ( = 40.75% X $10,588.98)[21].

The tax and penalty liability of $4,315.01 would, as a priority claim, be paid in full before the other unsecured claims. The general unsecured claims would be paid a total of $10,964.64 ( = $15,279.65 - $4,315.01). This would constitute a dividend of approximately 16.8% ( = $10,964.64  / $65,452.27) to unsecured creditors.

B. Other Green Factors to be Considered.

*(1) Financial Trauma.* The first factor other than disposable income mentioned in Green concerns whether the Debtor has experienced a financial trauma in the time leading up to the filing of the petition. Financial traumas include such things as a large medical debt, an involuntary change in employment, and a change in the family structure such as a divorce or the death of a spouse.

The financial effects of the Debtor's divorce are at least two-fold. First, he is required

---

[20] The United States trustee, citing IRS Publication 575 argues that not all of the unpaid balance on the 401(k) loan would be subject to tax and penalty. The United States trustee asserts that "the portion attributable to the employee's contribution (the 'cost of the contract') is not taxable." From this assertion, the United States trustee concludes that some portion of the $10,588.98 would not be taxable. The United States trustee asserts that the non-taxable amount would be the same percentage of the loan as the percentage of the full account that constitutes contributions by the debtor.

The assumption that the employees contribution is the same as the "cost of the contract" as that term is used in IRS Publication 575 is simply not correct. The cost of contract is the cost of an annuity or pension plan that is funded with the non-deferrable portion of any contribution.

> "To find [the amount of cost in the contract] you must first figure the total premiums, contributions, or other amounts you paid. This includes the amounts your employer contributed that were taxable to you when paid. . . . *It does not include amounts withheld from your pay on a tax-deferred basis* (money that was taken out of your gross pay before taxes were deducted.)

IRS Publication 575 at page 9 (Emphasis added.).

[21] As a priority claim, see 11 U.S.C. § 507(a), the Debtor would be required to pay the tax claim in full in a chapter 13 plan. See 11 U.S.C. § 1322(a)(2).

11

under the separation agreement to pay an additional $550.00 to a creditor, his former wife, that did not exist prior to the divorce. Second, he no longer receives the benefit of any financial (or labor) contribution that she formerly made to the family unit. To the extent that this factor is relevant, it weighs in favor of denying the motion to dismiss.

*(2) Excessive Credit.* The second factor requires the court to ascertain whether the Debtor incurred cash advances and made consumer purchases *far* in excess of his or her ability to pay. The United States trustee does not assert, and there is nothing in the record that indicates, that the Debtor has taken cash advances or purchased luxuries. This factor weighs in favor of denying the motion of the United States trustee.

*(3) Excessive Budget.* The third factor concerns whether the Debtors' proposed budget is excessive or unreasonable. The United States Trustee stated in his pre-hearing memorandum that the Debtor's budget is not unreasonable. To the extent that this factor is relevant, it weighs in favor of denying the motion to dismiss.

*(4) Accuracy of the Debtors' Schedules and Statement of Financial Affairs.* The United States Trustee has not challenged the accuracy of the Debtor's schedules. To the extent that this factor is relevant, it weighs in favor of denying the motion to dismiss.

*(5) Bad Faith.* The United States trustee does not assert that the Debtor has engaged in any act of bad faith, other than accumulating debt which he now has difficulty repaying. This proves too much. If this were a reason, without more, to dismiss a bankruptcy case, then chapter 7 would become little more than a footnote in the bankruptcy code. To the extent that this factor is relevant, it weighs in favor of denying the motion to dismiss.

### *III. Conclusion*

In this case, the only thing to recommend granting the motion of the United States trustee is a 16.8% dividend that would accrue to unsecured creditors under a chapter 13 plan. This standing alone is not sufficient to dismiss a chapter 7 case. None of the other factors suggested by the Court in Green counsel dismissal of this case. It is concluded that it would not be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to permit the Debtor to continue as a debtor under chapter 7.

An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtor and Douglas Little, Esq., counsel for the Debtor.

Entered on this 19th day of May, 2006.

William E. Anderson
United States Bankruptcy Judge